# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSE SANCHEZ, | ) | Civil Action No. 2: 13-cv-0982 |
| | ) | |
| Plaintiff, | ) | |
| | ) | United States Magistrate Judge |
| v. | ) | Cynthia Reed Eddy |
| | ) | |
| BRIAN V. COLEMAN, et al., | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Presently before the Court is the Motion to Dismiss For Failure to State A Claim, with brief in support, filed by Defendant Herbik (ECF Nos. 39 and 40) and the Motion To Dismiss For Failure to State a Claim, with brief in support, filed by Defendants Susan Berrier, Brian V. Coleman, Pamela Filchek, Tom Hivanic, Rhonda House, K. Randolph, and Dorina Varner (hereinafter referred to as the "Commonwealth Defendants") (ECF Nos. 65 and 66). For the reasons that follow, the Motion filed by Defendant Herbik will be granted and the Motion filed by the Commonwealth Defendants will be granted to the extent that Plaintiff's claims of deliberate indifference to his medical needs will be dismissed.[1]

### Procedural History

Plaintiff Jose Sanchez, is an inmate who is currently confined in the custody of the Pennsylvania Department of Corrections ("DOC") in the State Correctional Institution ("SCI") at Fayette. Plaintiff initiated this lawsuit on July 11, 2013, by the filing of a Motion for Leave to Proceed *in forma pauperis*, with an attached civil rights complaint. (ECF No. 1). By Order entered July 12, 2013, the case was dismissed without prejudice as Plaintiff had failed to provide

---

[1] The parties have consented to jurisdiction by the undersigned Magistrate Judge. *See* ECF Nos. 14, 20, and 21.

the necessary financial paperwork required under 28 U.S.C. § 1915(a)(2). Plaintiff thereafter resubmitted a Motion for Leave to Proceed *in forma pauperis* attaching the required financial paperwork, and a new complaint.[2] The motion was granted, the case was reopened on August 15, 2013, and the Complaint filed. (ECF No. 8). Thereafter, Defendants filed timely motions to dismiss.

In response to Defendants' motions to dismiss, Plaintiff filed a seven-count Amended Complaint (ECF No. 38), which remains the operative complaint.[3] Plaintiff brings this suit pursuant to 42 U.S.C. § 1981; 42 U.S.C. § 1983, and 42 U.S.C. § 1985, alleging violations of his rights under the First, Fourth, Eighth and Fourteenth Amendments to the United States Constitution. Generally, he alleges that medical treatment was delayed and/or that he was denied medical treatment for ongoing complaints of pain associated with gastrointestinal issues he was experiencing. He also alleges that Defendants failed to protect him and other similarly situated inmates at SCI-Fayette from harm created by an allegedly "unsafe environment (i.e. contaminated water and/or food)." Amended Complaint, Count VII. As relief, Plaintiff seeks a declaratory judgment, "preliminary permanent injunction" prohibiting retaliation; compensatory and punitive damages, costs and attorney's fees, and any other relief deemed just, equitable, and proper." Amended Complaint, at ¶ VI.

---

[2]    The Complaint submitted with the resubmitted Motion for Leave to Proceed in forma pauperis differed from the Complaint submitted with Plaintiff's initial Motion for Leave to Proceed in forma pauperis. Compare ECF No. 1-1 with ECF No. 8.

[3]    On March 19, 2014, Plaintiff filed a Second Amended Complaint (ECF No. 61) which simply changed the name of one defendant from Tara Morich to Tom Hivanic. Plaintiff stated that nothing had changed from the "original complaint." The Commonwealth Defendants state that it is unclear whether Plaintiff was referring to the actual original complaint (ECF No. 8) or the Amended Complaint (ECF No. 38). However, in his Response to the motions to dismiss, Plaintiff recognizes that his amended complaint supercedes his original complaint. (ECF No. 71 at 2).

Defendants include employees and health care providers for the Pennsylvania DOC. They include: Brian V. Coleman, Superintendent of SCI-Fayette; Susan Berrier, Corrections Health Care Administrator at SCI-Fayette; K. Randolph, Registered Nurse Supervisor at SCI-Fayette; Rhonda House, Facility Grievance Coordinator at SCI-Fayette; Pamela Filcheck, Nurse at SCI-Fayette; Tom Hivanic, Nurse at SCI-Fayette; and Dorina Varner, Chief Grievance Counselor (collectively referred to as the "Commonwealth Defendants"), Dr. Herbik, Medical Doctor at SCI-Fayette; and Barry Beavan, M.D., Medical Doctor at SCI-Camp Hill (an unserved defendant).

Defendant Dr. Herbik and the Commonwealth Defendants have each filed Motions to Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF Nos. 39 and 65). Plaintiff responded in opposition to both motions. (ECF No. 71). The matter is ripe for disposition.

## Factual Background

Plaintiff alleges the following facts in his Amended Complaint, which are accepted as true for purposes of the motions to dismiss. *See Newman v. Beard,* 617 F.3d 775, 779 (3d Cir. 2010). While incarcerated at SCI-Camp Hill, Plaintiff began experiencing abdominal pain and gastrointestinal issues. In 2006, Plaintiff was transferred from SCI-Camp Hill to SCI-Fayette, and continued to complain of abdominal pain and gastrointestinal issues. Plaintiff posits two theories on the origin of his abdominal pain and gastrointestinal issues: (i) he was given the wrong medication / antibiotic while he was incarcerated at SCI-Camp Hill, which caused him to develop C-Diff bacteria, and/or (ii) the food and water at SCI-Fayette is contaminated which has made him ill. Plaintiff contends that he has been unable to obtain adequate medical care for his ailments.

Plaintiff also contends that Defendants have failed to protect him and other similarly situation inmates at SCI-Fayette from the harm created by the allegedly contaminated water and/or food. Plaintiff contends that although he has made Defendants aware of the alleged contaminated water and food, Defendants have failed to investigate his complaints, have failed to remedy the contamination, and have engaged in a conspiracy to "cover up" the contamination in order to avoid a lawsuit.

**Standard Of Review**

A.     *Pro Se Litigants*

Pro se pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520–521 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or the litigant's unfamiliarity with pleading requirements. *Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley,* 141 F.2d 552, 555 (3d Cir.1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance").

In a § 1983 action, the court must liberally construe the pro se litigant's pleadings and "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name." *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) (quoting *Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 247–48 (3d Cir. 1999)). *See also Nami v. Fauver,* 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting *Higgins,* 293 F.3d at 688). Under our liberal pleading rules, during the initial stages of litigation, a district

court should construe all allegations in a complaint in favor of the complainant. *Gibbs v. Roman,* 116 F.3d 83 (3d Cir. 1997). *See, e.g., Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir.1996) (discussing Fed.R.Civ.P. 12(b)(6) standard); *Markowitz v. Northeast Land Co.,* 906 F.2d 100, 103 (3d Cir. 1990) (same). Notwithstanding this liberality, pro se litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. *See, e.g., Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378, (5th Cir. 2002).

B. *Motion to Dismiss Pursuant to Rule 12(b)(6) - The Legal Standard*

A motion to dismiss pursuant to Rule 12(b)(6) challenges the legal sufficiently of the complaint. When reviewing a motion to dismiss, the Court must accept all well-pleaded facts and allegations, and must draw all reasonable inferences therefrom in favor of the plaintiff. *Burtch v. Milberg Factors, Inc.,* 62 F.3d 212, 220 (3d Cir. 2011), *cert. denied,* -- U.S. --, 131 S. Ct. 1861 (2012) (citing *In re Ins. Brokerage Antitrust Litig.,* 618 F.3d 300, 314 (3d Cir. 2010)). However, as the Supreme Court of the United States made clear in *Bell Atlantic Corp. v. Twombly,* such "[f]actual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. 554, 555 (2007). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that, while the Complaint need not contain detailed factual allegations, it must contain more than a "formulaic recitation of the elements" of a constitutional claim and must state a claim that is plausible on its face) (quoting *Twombly*, and providing further guidance on the standard set forth therein).

To determine the legal sufficiency of a complaint after *Twombly* and *Iqbal,* the United States Court of Appeals for the Third Circuit instructs that a district court must conduct a three-step analysis when considering a motion to dismiss for failure to state a claim. *Malleus v. George,* 641 F. 3d 560, 563 (3d Cir. 2011) (quoting *Iqbal,* 556 U.S. at 675, 679); *Santiago v.*

*Warminster Twp.,* 629 F.3d 121, 130 n.7 (3d Cir. 2010) (noting that although *Iqbal* describes the process as a "two-pronged approach," it views the case as outlining three steps) (citing *Iqbal*, 556 U.S. at 675). First, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* at 130 (quoting *Iqbal,* 556 U.S. at 675) (alteration in original). Second, the court "should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal,* 556 U.S. at 679). Third, "'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'" *Id.* (quoting *Iqbal,* 556 U.S. at 679). "While legal conclusions can provide the framework of a Complaint, they must be supported by factual allegations." *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210-11 (3d Cir. 2009); *see also Malleus*, 641 F.3d at 560.

The Court may not dismiss a Complaint merely because it appears unlikely or improbable that Plaintiff can prove the facts alleged or will ultimately prevail on the merits. *Twombly*, 550 U.S. at 563 n.8. Instead, the Court must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. *Id*. at 556. Generally speaking, a complaint that provides "how, when, and were" will survive a motion to dismiss. *Fowler,* 578 F.3d at 212; *see also Guirguis v. Movers Speciality Servs., Inc.,* 346 F. App'x 774, 776 (3d Cir. 2009). A motion to dismiss should not be granted if a party alleges facts, which could, if established at trial, entitle him or her to relief. *Twombly*, 550 U.S. at 563, n.8.

Courts generally consider the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993). Factual allegations within documents described or identified in the complaint also may be considered if the plaintiff's claims are based upon

those documents. *Id.* (citations omitted). In addition, a district court may consider indisputably authentic documents without converting a motion to dismiss into a motion for summary judgment. *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004); *Lum v. Bank of America*, 361 F.3d 217, 222 (3d Cir. 2004) (in resolving a motion to dismiss pursuant to Rule 12(b)(6), a court generally should consider "the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.").

Moreover, the United States Court of Appeals for the Third Circuit has held that, in civil rights cases, a court must give a plaintiff the opportunity to amend a deficient complaint - regardless of whether the plaintiff requests to do so - when dismissing a case for failure to state a claim, unless doing so would be inequitable or futile. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.,* 482 F.3d 247, 251 (3d Cir. 2007).

## Discussion

A.    *Plaintiff's Claims Under Section 1981*

Plaintiff's § 1981 claims are easily disposed of as frivolous.[4]    Section 1981, which prohibits racial discrimination provides, in relevant part, the following:

---

[4] Despite the fact that none of the Defendants address this claim in their motions to dismiss, it is still proper for this Court to address the issue *sua sponte*. The Prison Litigation Reform Act ("PLRA"), Pub.L. No. 104–134, §§ 801–810, 110 Stat. 1321–66 to 1321–77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding *in forma pauperis* (28 U.S.C. § 1915(e)(2)) or seeks redress against a governmental employee or entity (28 U.S.C. § 1915A). The Court is required to identify cognizable claims and to *sua sponte* dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). This action is subject to *sua sponte* screening for dismissal under 28 U.S.C. § 1915(e)(2) and 28 U.S.C. §1915A because Plaintiff is a prisoner proceeding pro se and is seeking redress from a governmental employee or entity. *Stackhouse v. Crocker*, 266 F. App'x 189, 190 (3d Cir. 2008) (*citing  Neitzke v. Williams*, 490 U.S. 319, 325 (1989)). The standard for reviewing a complaint under 1915(e)(2)(B) is the same as that for determining a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See  Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999).

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). In order to state a claim under Section 1981, a plaintiff "must allege facts in support of the following elements: (1) [that plaintiff] is a member of a racial minority; (2) intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in the statute. . . ." *Brown v. Phillip Morris, Inc.*, 250 F.3d 789, 797 (3d Cir. 2001) (quoting *Yelverton v. Lehman*, No. Civ. A. 94–6114, 1996 WL 296551, at *7 (E.D.Pa. June 3, 1996), *aff'd. mem.*, 175 F.3d 1012 (3d Cir. 1999)).

Plaintiff fails to make a single factual allegation which supports, or even suggests, that racial discrimination was a factor in the incidents underlying this lawsuit. Such allegations are an essential element of any § 1981 claim. Accordingly, Plaintiff's Section 1981 claims will be dismissed *sua sponte* with respect to all Defendants.

B.  *Plaintiff's Claims Under Section 1983*

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must allege: (i) that the alleged misconduct was committed by a person acting under color of state law; and (ii) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. *West v. Atkins,* 487 U.S. 42 (1988).

1.    <u>First Amendment - Retaliation</u>[5]

As the United States Court of Appeals for the Third Circuit has explained, the elements of a retaliation claim are: " (1) constitutionally protected conduct, (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him." *Williams v. Secy PA Dept. of Corrections*, 566 F. App'x 113, 117 (3d Cir. 2014) (quoting *Mitchell v. Horn,* 318 F.3d 523, 530 (3d Cir. 2003)). The requisite causal connection can be demonstrated by "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Id.* (*quoting Lauren W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

In Count VI of the Amended Complaint, Plaintiff contends that Defendants Berrier and/or Herbik denied him medical care and falsified his medical records / history in retaliation for Plaintiff "advising Defendant Berrier that he was going to file a lawsuit because of the way he has been denied adequate medical care. . . ."  Amended Complaint, Count VI, at 15-16.

The Court finds that Plaintiff's allegation of retaliation is merely a bald assertion without supporting facts and, as such, it is wholly inadequate to support the inference that Defendants' alleged actions were based on their desire to retaliate against him. *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997) (holding that a court need not credit a plaintiff's "bald assertions" or "legal conclusions" when deciding a motion to dismiss). Consequently, Plaintiff's

---

[5]      The Court is addressing this issue *sua sponte* pursuant to the PLRA screening provisions. *See* note 4 *supra.*

allegations are insufficient to "nudge[ ][his] claims across the line from conceivable to plausible." *Twombly*, 550 U .S. at 570. Accordingly, this claim will be dismissed.

2. Fourth Amendment - Right of Privacy[6]

Count III of the Amended Complaint reads as follows:

> As a result of Defendants Nurse [Pam Filchak and Tom Hivanic] sending Plaintiff back to his housing unit without treating him or examining him when he was brought to medical because he had defecated on himself and without sending him to the infirmary or allowing him to take a shower in the infirmary and his cellmate or someone bring him a change of clothes or to make sure he was provided with a set of clean clothes before sending him back to his housing unit . . . said Defendants caused Plaintiff to be compelled to live in a state of fear that he may die from not being treated and/or or admitted into the infirmary, and further caused him to suffer anxiety, emotional distress, frustration, embarrassment and humiliation by making him go back to his housing unit with the same pants and underdraws on in which he had defecated on himself in, and thus caused him to be <u>denied his right to privacy and to not be discriminated against because of his accident / handicap</u> (i.e. not being able to control his bowel movement) and thereby punished, in violation of his rights under the Fourth and Fourteenth Amendment, and in further violation of 42 U.S.C. §§ 1981 and 1983.

Amended Complaint, Count III, at 13 (emphasis added).

Even under the most charitable reading of Plaintiff's Amended Complaint, the facts as alleged in the Amended Complaint simply do not rise to the level of a constitutional violation. While Plaintiff may have suffered embarrassment and humiliation in having to return to his housing unit in his soiled clothing, the Court cannot conclude that Plaintiff's constitutional rights were violated by Defendants' actions. Accordingly, this claim will be dismissed.

3. Eighth Amendment - Conditions of Confinement

a. *Failure to Protect*

Plaintiff alleges that Defendants caused him "and those similarly situated inmates" to be subjected to an unsafe environment (i.e. contaminated water and/or food),[7] and that the drinking

---

[6]     The Court is addressing this issue *sua sponte* pursuant to the PLRA screening provisions. *See* note 4 *supra.*

water or some type of food at SCI-Fayette caused his medical problems. Although not stated as such, the Court liberally construes Plaintiff's claims as a failure to protect claim. The Commonwealth Defendants did not address this allegation in their motion to dismiss, although the claim is referenced in their Brief in support of their motion to dismiss. *See* ECF No. 66 at 2 ("He also includes the claim that there is something in the water and food at SCI-Fayette that is causing him and others harm without a scintilla of factual support.").

To establish an Eighth Amendment claim based on a failure to protect theory, a plaintiff must demonstrate: (1) that he was incarcerated under conditions posing a substantial risk of serious harm, and (2) the prison official acted with deliberate indifference to their health and safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Moreover, the prison official "must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." *Beers–Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001).

According to the Amended Complaint, Plaintiff filed grievances and appeals about the alleged contaminated water and/or food, and Defendants House, K. Randolph, Coleman, and Varner denied his grievances and appeals without addressing or investigating the contaminated food or water issues. Amended Complaint at 6.

In light of Plaintiff's essentially unrefuted allegations, the Court finds that the Amended Complaint has stated a plausible failure to protect claim against Defendants House, K. Randolph, Coleman and Varner. The Court recognizes that discovery may well reveal that the alleged conduct of these Commonwealth Defendants does not give rise to a failure to protect claim, but

---

[7] As to this allegation, it appears that Plaintiff is attempting to bring a conditions of confinement claim not only on his own behalf, but on behalf of all other similarly situated inmates. However, a pro se prisoner may not be the representative of a class action on behalf of his fellow inmates. *Alexander v. New Jersey State Parole Bd.*, 160 F. App'x 249, 250 n. 1 (3d Cir. 2005).

at this early stage of the litigation, the allegations of the Amended Complaint must be accepted as true and all reasonable inferences must be drawn in Plaintiff's favor.

        b.    *Deliberate Indifference to Medical Care*

Among the central issues in this case is whether Plaintiff has alleged an actionable deliberate indifference claim. In accordance with the Eighth Amendment's prohibition against cruel and unusual punishment, the government is obliged "to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." *Id*. at 104 (citation omitted). "[W]hether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed . . . deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Id*. at 104–05 (citations omitted).

A medical need is "serious" if "it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro,* 834 F.2d 326, 347 (3d Cir. 1987) (internal quotation omitted). "The seriousness of an inmate's medical need may also be determined by reference to the effect of denying the particular treatment." *Id*. The "deliberate indifference" a plaintiff must allege lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other" and is frequently equated with recklessness as that term is defined in criminal law. *Farmer v. Brennan*, 511 U.S. 825, 836–37 (1994). This standard "affords considerable latitude to prison medical authorities in the diagnosis

and treatment of the medical problems of inmate patients." *Inmates of Allegheny Cnty. Jail v. Pierce,* 612 F.2d 754, 762 (3d Cir. 1979). Where a prisoner has received medical care and only the adequacy of the treatment is disputed, courts are often reluctant to second guess professional medical judgment. *See id.*

However, deliberate indifference can be manifested by an intentional refusal to provide care, delayed medical treatment, and the denial of prescribed medical treatment. *See Durmer,* 991 F.2d at 64; *Giles v. Kearney,* 571 F.3d 318, 330 (3d Cir. 2009) ("Deliberate indifference may be shown by intentionally denying or delaying medical care.").

The Court will assume, solely for purposes of this Memorandum Opinion, that Plaintiff has a serious medical need. It is well established that an inmate does not have a constitutional right to see a doctor on demand or the doctor of his choice. Nor is an inmate entitled to a particular course of treatment or to have particular tests performed. *Jetter v. Beard,* 130 F. App'x 523, 526 (3d Cir. 2005), *cert. denied,* 546 U.S. 985 (noting that while plaintiff would have preferred a different course of treatment, his preference does not establish an Eighth Amendment cause of action). Moreover, the United States Court of Appeals for the Third Circuit has held that, under the deliberate indifference standard, prison medical authorities have "considerable latitude" in exercising judgment in the diagnosis and treatment of inmate patients and courts should "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment which remains a question of sound professional judgment." *Carter v. Smith*, 2012 WL 1864006 at *1 (3d Cir. May 23, 2012) (*quoting Pierce*, 612 F.2d at 762).

i.  <u>The Medical Staff  - Defendants Dr. Herbik, Nurse K. Randolph, Nurse Pamela Filcheck, and Nurse Tom Hivanic,</u>

Defendants argue that Plaintiff's deliberate indifference claim against them should be dismissed because the allegations in the Amended Complaint amount to a disagreement with the type of medical care and not a refusal to provide care.  The main thrust of Plaintiff's deliberate indifference claim is that he was denied medical care for his intestinal problems which started while incarcerated at SCI-Camp Hill and which were misdiagnosed and/or not treated at SCI-Fayette.  However, the Amended Complaint reflects that Plaintiff received regular medical attention to his medical issues, to wit:

• July 23, 2012 - Nurse sees Plaintiff for stomach pain.  Paperwork filled out for Plaintiff to see a specialist;

• July 27, 2012 - Plaintiff sees a gastroenterologist;

• August 15, 2012 - Plaintiff has a colonoscopy, given additional medications and lab work;

• November 11, 2012 - sick call examination;

• November 15, 2012 - Plaintiff sees Dr. Herbik who makes arrangements for Plaintiff to be seen by a specialist.  Also, nurse treats Plaintiff for C-Diff;

• November 29, 2012 - seen on sick call;

• December 13, 2012 - conversation with Defendant Berrier about medical problems;

• September 27, 2012 - seen by a nurse.

The only direct contact between Plaintiff and Dr. Herbik mentioned in the Amended Complaint purportedly occurred on November 15, 2012.  On that date, Dr. Herbik saw Plaintiff and indicated he would make "arrangements for Plaintiff to be seen by a 'specialist.'"  *Id*. at ¶ 4, p. 7.  Subsequently, Plaintiff received confirmation from Defendant Susan Berrier that he was

scheduled to see a specialist. *Id.* Plaintiff was referred to a psychologist / psychiatrist, who saw Plaintiff and prescribed medication for stress and anxiety.

The allegations in the Amended Complaint clearly demonstrate that Plaintiff received medical treatment for his health needs, although he disagrees with the course of treatment. This does not state a viable claim for relief. *Spruill v. Gillis*, 373 F.3d 218, 235 (3d Cir. 2004) ("mere disagreement as to the proper medical treatment" in insufficient to state a constitutional violation). Thus, Plaintiff's deliberate indifference to serious medical needs claim against Defendants Dr. Herbik, Nurse K. Randolph, Nurse Pamela Filcheck, and Nurse Tom Hivanic will be dismissed.

ii. The Non-Medical Defendants - Defendants Coleman, Berrier, House and Varner

In the context of medical care claims, "[c]orrectional defendant - administrators who are not themselves physicians cannot 'be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." *Davis v. Thomas*, 558 F. App'x 150, 155 (3d Cir.) (citing *Durmer v. O'Carroll,* 991 F.2d 64, 69 (3d Cir. 1993)) *cert. denied*, --U.S. --, 2014 WL 3841942 (2014). As explained by our court of appeals, "[i]f a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Id.* (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)). "If the non-medical prison official has no actual knowledge that prison doctors are mistreating a prisoner, he or she "will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Id. See also Rodriguez v. Sec'y Pa. Dep't Corr*., 441 F. App'x 919, 923 (3d Cir. 2011) (finding that the defendants' decisions and responses to a prisoner's complaints were

based upon medical records and did not constitute deliberate indifference); *see also, Durmer*, 991 F.2d at 69 (where a plaintiff was receiving care from prison doctor, no deliberate indifference existed simply because of the plaintiff's disagreements or medical complaints with his care and the defendant's failure to respond directly to them).

Correctional staff can, and should, defer to the judgment of medical professionals on medical matters. When they do so, "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d. Cir. 2004).

On the factual allegations contained in the Amended Complaint, the Court finds that there are no allegations in the Amended Complaint against Defendants Coleman, Berrier, House, or Varner that would support a finding that they were deliberately indifferent to Plaintiff's serious medical needs. Indeed, there are no allegations that these Defendants were personally involved in the denial or inadequacy of Plaintiff's medical care.[8] Thus, Plaintiff's deliberate indifference to serious medical needs claim against Defendants Coleman, Berrier, House, and Varner also will be dismissed.

4.    <u>Civil Rights Conspiracy</u>[9]

In order to set forth a cognizable § 1983 conspiracy claim, a plaintiff cannot rely on broad or conclusory allegations. *D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch.*,

---

[8]    To be liable under § 1983, "a defendant . . . must have personal involvement in the alleged wrongs." *Sutton v. Rasheed*, 323 F.3d 236, 249-50 (3d Cir. 2003). Liability does not attach in claims involving inadequate medical care on a theory of respondeat superior. *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077, 1082 (3d Cir. 1976).

[9]    The Court notes that Defendant Herbik addressed this claim in his motion to dismiss, but the Commonwealth Defendants did not.

972 F.2d 1364, 1377 (3d Cir. 1992); *Rose v. Bartle*, 871 F.2d 331, 366 (3d Cir. 1989). The Court of Appeals for the Third Circuit has noted that a civil rights conspiracy claim is sufficiently alleged if the complaint details the following: 1) the specific conduct that violated the plaintiff's rights, 2) the time and the place of the conduct, and 3) the identity of the officials responsible for the conduct. *Oatess v. Sobolevitch*, 914 F.2d 428, 431 n. 8 (3d Cir. 1990). A plaintiff must allege a conspiracy with particularity even though a heightened pleading standard generally does not apply to civil rights actions. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993). A complaint alleging a conspiracy must make "factual allegations of combination, agreement, or understanding among all or between any of the defendants [or coconspirators] to plot, plan, or conspire to carry out the alleged chain of events." *Spencer v. Steinman*, 968 F. Supp. 1011, 1020 (E.D.Pa. 1997). *See also Loftus v. Southeastern Pa. Transp. Auth.*, 843 F. Supp. 981, 987 (E.D.Pa. 1994) ("[w]hile the pleading standard under [Fed.R.Civ.Proc.] Rule 8 is a liberal one, mere incantation of the words 'conspiracy' or 'acted in concert' does not talismanically satisfy the Rule's requirements").

The essence of a conspiracy is an agreement or concerted action between individuals. *See D.R. by L.R.*, 972 F.2d at 1377; *Durre*, 869 F.2d at 545. A plaintiff must therefore allege with particularity and present material facts which show that the purported conspirators reached some understanding or agreement or plotted, planned and conspired together to deprive a plaintiff of a protected federal right. *See D.R. by L.*R., 972 F.2d at 1377; *Rose*, 871 F.2d at 366. Where a civil rights conspiracy is alleged, there must be specific facts in the complaint which tend to show a meeting of the minds and some type of concerted activity. *Deck v. Leftridge*, 771 F.2d 1168, 1170 (8th Cir. 1985). A plaintiff cannot rely on subjective suspicions and unsupported speculation. *Young v. Kann*, 926 F.2d 1396, 1405 n. 16 (3d Cir. 1991)).

Additionally, as Section 1983 does not create a cause of action for conspiracy in and of itself, a plaintiff must also allege some underlying deprivation of a constitutional right. *Holt Cargo Systems, Inc. v. Delaware River Port Auth.,* 20 F.Supp.2d 803, 843 (E.D.Pa .1998); *see also Hickson v. Marina Associates*,743 F. Supp.2d 362, 370 n. 22 (D.N.J. Sept.27, 2010) ("[t]he theory of conspiracy does not yield an independent cause of action under Section 1983, but instead presents merely a means to impute liability to other wrongdoers for violations of federal rights").

In the case *sub judice,* it is clear that Plaintiff has failed to allege sufficient facts, with sufficient particularity, to state a plausible claim for relief under the theory of Section 1983 against Defendants with respect to his constitutional claims. Conclusory statements, such as they "had a meeting of their minds and agreed openly or silently to cover up or ignore the fact" or had a "conspiracy to circumvent liability" simply are insufficient to impute liability onto Defendants under Section 1983. Consequently, Plaintiff's Section 1983 conspiracy claims, will be dismissed.

C.      *Plaintiff's Claims Under Section 1985*[10]

The Amended Complaint also states that Plaintiff is attempting to assert liability for conspiracy pursuant to 42 U.S.C. § 1985. Plaintiff does not state under which subsection of § 1985 he makes this claim. The Supreme Court of the United States has interpreted both § 1985(3) and the second clause of § 1985(2) similarly, finding that each contains language "requiring that the conspirators' actions be motivated by an intent to deprive their victims of the equal protection of the laws." *Kush v. Rutledge,* 460 U.S. 719, 725. (1983). It is a well-settled

---

[10]      The Court is addressing this issue sua sponte pursuant to the PLRA screening provisions. *See* note 4 *supra.*

constitutional interpretation that "intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Id*., 460 U.S. at 726. The Court finds that the Amended Complaint fails to state a claim for conspiracy under Section 1985 for two reasons.

First, as with his Section 1983 conspiracy claims, Plaintiff has failed to allege sufficient facts from which one could infer an agreement or understanding among the Defendants to violate Plaintiff's right. Second, Plaintiff does not allege any actionable form of "invidious discriminatory animus" in his Amended Complaint. Nowhere in the Amended Complaint does Plaintiff allege that his mistreatment was based on his race. It is not reasonable to infer from the allegations of the Amended Complaint that Defendants were motivated to deprive Plaintiff of equal protection / justice under the law because of his race. Furthermore, to the extent that Plaintiff alleges that Defendants' bad acts were based on Plaintiff's status as a prisoner, he still fails to satisfy this requirement, as it is well established that prisoners are not a protected class. *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 317 (3d Cir. 2001).

Consequently, Plaintiff's Section 1985 conspiracy claims will be dismissed.

D.      *Claims against Barry Beavan, M.D.*

According to the Amended Complaint, in November 2012, "Nurse Darla" advised Plaintiff that the reason he was having problems with his stomach was because while he was housed at SCI-Camp Hill, he was  prescribed the wrong medicine / antibiotic for which he was not properly treated, causing him to have C-Diff bacteria (i.e. colonsyndrome defect). Defendant Barry Beavan, M.D., was the physician responsible for prescribing Plaintiff the wrong medicine / antibiotic and/or not providing the proper treatment. Plaintiff contends that Defendant Beavan's

actions / inactions were "in violation of the Fourteenth Amendment to the United States Constitution."  Amended Complaint at 10.

The United States Court of Appeals for the Third Circuit has observed, "[s]ection 1983 contains no special venue provision. Therefore, the general venue provisions of 28 U.S.C. § 1391 apply." *Urrutia v. Harrisburg County Police Dept*., 91 F.3d 451, 462 (3d Cir.1996) (citation omitted). Section 1391 provides in relevant part that

> A civil action may be brought in (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

The Amended Complaint indicates that Defendant Beavan is apparently either employed at or worked at SCI-Camp Hill,  which is located in Cumberland County, which is a part of the Middle District of Pennsylvania.  This supports the inference that Defendant Beavan resides in the Middle District.  In addition, it appears that not only a "substantial part of the events or omissions giving rise to the claim occurred" in the Middle District but all of the events or omissions occurred in the Middle District. As such, it appears that venue is properly laid in the Middle District.

A District Court is granted discretion to sua sponte transfer cases by 28 U.S.C. § 1404(a) which provides in relevant part that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought. . . ." *See Robinson v. Town of Madison*, 752 F. Supp. 842, 846

(N.D.Ill. 1990) ("A court's authority to transfer cases under § 1404(a) does not depend upon the motion, stipulation or consent of the parties to the litigation.").

Thus, the Court is presented with the question of whether transfer to the Middle District is "for the convenience of the parties and witnesses [and] in the interest of justice." In performing this analysis, courts may rely upon traditional venue considerations.

In ruling on § 1404(a) motions, courts have considered a host of factors that flesh out the considerations enunciated in the statute (convenience of parties, convenience of witnesses, and the interest of justice). The analysis is flexible and must be made on the unique facts of each case. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249–50 (1981). In *Gulf Oil v. Gilbert*, 330 U.S. 501 (1946), the United States Supreme Court listed two sets of factors that should be considered in deciding a transfer request. The *Gulf Oil* factors fall into two broad categories. One category is factors relating to the private interests of the parties to the litigation, including: the plaintiff's choice of forum, ease of access to sources of proof, availability of compulsory process over unwilling witnesses, obstacles to a fair trial and "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id*. at 508. The other category consists of factors involving the public interests in administration of the courts and adjudication of cases, including: court congestion and other administrative difficulties, placing the burden of jury duty on those having the closest ties to the action, local interests in having cases adjudicated at home, and familiarity of the forum court with the applicable law. *See id*. at 508–09.

However, § 1404(a) contemplates the transfer of an entire civil proceeding <u>and not individual claims</u>. *Excentus Corp. v. Giant Eagle, Inc.,* 2014 WL 923520 (W.D.Pa. 2014) (citing *Chrysler Credit Corp. v. Country Chrysler, Inc*., 928 F.2d 1509, 1518-19 (10th Cir. 1991)) ("Section 1404(a) only authorizes the transfer of an entire action, not individual claims.");

*Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 618 (2d Cir. 1968)). The court may, however, sever transferable claims under Federal Rule of Civil Procedure 21, which would result in two separate actions, and then transfer the severed action to the appropriate court. *Id.* at *10 (quoting *Wyndham*, 398 F.2d at 618) ("Where certain claims are properly severed, the result is that there are then two or more separate 'actions,' and the district court may, pursuant to § 1401(a), transfer certain of such separate actions while retaining jurisdiction of others.")

Having given due consideration to all of the above factors, it is the Court's considered opinion that those factors weigh in favor of severing the claim against Defendant Beavan. The standalone civil proceeding against Dr. Beavan created by the court severing this claim from the other claims asserted in this case will be transferred *sua sponte* to the United States District Court for the Middle District of Pennsylvania.

Within fourteen days of the entry of this Memorandum Opinion and accompanying Order, Plaintiff must file his claim(s) against Dr. Beavan in a separate case in this district. The Clerk of Court will be directed not to charge a filing fee for that case. After the case is filed, this Court will enter an order to transfer the new case to the United States District Court for the Middle District of Pennsylvania.

E.    *Futility*

If a civil rights complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile. *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007). A district court must provide the plaintiff with this opportunity even if the plaintiff does not seek leave to amend. *Id.*

Given that Plaintiff has amended his Complaint three times (see ECF Nos. 1-1, 8, 38, and 61), the Court is not required to provide him with further leave to amend as further amendment would be futile. *Shelley v. Patrick,* 481 F. App'x 34, 36 (3d Cir. 2012).

### Conclusion

In sum, what remains of Plaintiff's claims at this point is the claim against Defendants House, K. Randolph, Coleman, and Varner based on Plaintiff's failure to protect allegations. An appropriate Order follows.

**AND NOW**, this 11th day of December 2014,

It is hereby **ORDERED, ADJUDGED AND DECREED** as follows:

(i)     The Motion to Dismiss For Failure to State A Claim filed by Defendant Herbik (ECF No. 39) is **GRANTED** for failure to state a claim**;**

(ii)     The Motion To Dismiss For Failure to State a Claim filed by Defendants Susan Berrier, Brian V. Coleman, Pamela Filchek, Tom Hivanic, Rhonda House, K. Randolph, and Dorina Varner (ECF No. 65) is **GRANTED** to the extent that Plaintiff's claims of deliberate indifference to his medical needs are dismissed for failure to state a claim;

(iii)     Plaintiff's Section 1981 claims are dismissed *sua sponte* with prejudice as to all Defendants for failure to state a claim;

(iv)     Plaintiff's Section 1983 conspiracy, retaliation, and right to privacy claims are dismissed *sua sponte* with prejudice as to all Defendants for failure to state a claim;

(v)     Plaintiff's Section 1985 claims are dismissed *sua sponte* with prejudice as to all Defendants for failure to state a claim;

(vi)     Plaintiff's claims against Barry Beavan, M.D. are **HEREBY** severed from the claims in this lawsuit and will be transferred to the United States District Court for the Middle District of Pennsylvania.

(vii)    Plaintiff's claims for failure to protect against Defendants House, K. Randolph, Coleman, and Varner are the sole remaining claims in this lawsuit.

Defendants House, K. Randolph, Coleman, and Varner shall serve a responsive pleading in accordance with Federal Rule of Civil Procedure 12(a)(4).


<u>s/ Cynthia Reed Eddy</u>
Cynthia Reed Eddy
United States Magistrate Judge


cc:      JOSE SANCHEZ
         GR2847
         PO Box 9999
         LaBelle, PA 15450
         (via United States First Class Mail)

         Robert A. Willig
         Office of Attorney General
         (via CM/ECF electronic notification)


         J. Eric Barchiesi
         Law Offices of Bernard J. Kelly
         (via CM/ECF electronic notification)