# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSE SANCHEZ,<br><br>    Plaintiff,<br><br>v.<br><br>BRIAN V. COLEMAN, et al.,<br>    Defendants. | Civil Action No. 2: 13-cv-0982<br><br>United States Magistrate Judge<br>Cynthia Reed Eddy |

## MEMORANDUM OPINION AND ORDER

Presently before the Court is the Motion for Summary Judgment, with brief in support, filed by Plaintiff Jose Sanchez (ECF Nos. 93, 99 and 100) and the Motion For Summary Judgment filed by Defendants Brian V. Coleman, Rhonda House, K. Randolph, and Dorina Varner with brief in support (hereinafter collectively referred to as the "Commonwealth Defendants") (ECF Nos. 107 and 108). For the reasons that follow, the motion filed by Plaintiff will be denied and the motion filed by the Commonwealth Defendants will be granted.[1]

### Procedural History

Plaintiff Jose Sanchez is Pennsylvania state prisoner currently confined at SCI-Fayette. Plaintiff initiated this lawsuit on July 11, 2013, by the filing of a Motion for Leave to Proceed *in forma pauperis*, with an attached civil rights complaint. (ECF No. 1). After the appropriate financial paperwork required under 28 U.S.C. § 1915(a)(2) was received by the Court, the motion was granted and the complaint filed.[2] Plaintiff brings this suit pursuant to 42 U.S.C. §

---

[1] The parties have consented to jurisdiction by the undersigned Magistrate Judge. *See* ECF Nos. 14, 20, and 21.

[2] The Complaint submitted with the resubmitted Motion for Leave to Proceed in forma pauperis differed from the Complaint submitted with Plaintiff's initial Motion for Leave to Proceed in forma pauperis. Compare ECF No. 1-1 with ECF No. 8.

1

1981; 42 U.S.C. § 1983, and 42 U.S.C. § 1985, alleging violations of his rights under the First, Fourth, Eighth and Fourteenth Amendments to the United States Constitution. After the resolution of a volley of motions to dismiss following Plaintiff's amendment of his complaint, the sole claim remaining is Plaintiff's Eighth Amendment claim alleging he was harmed at SCI-Fayette by "unsafe environment (i.e. contaminated water and/or food)." Amended Complaint, Count VII.[3]

After discovery closed, Plaintiff and the Commonwealth Defendants filed the instant pending motions for summary judgment. The issues have been fully briefed and the factual record has been thoroughly developed via the attachments appended to Plaintiff's brief (ECF No. ECF No. 100-1 – 100-13), Defendants' Concise Statement of Material Facts (ECF No. 109), and the Appendix to Defendants' Concise Statement of Material Facts (ECF No. 110).

**Standard Of Review**

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id*.

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or showing that the

---

[3] The Court originally characterized this claim as a failure to protect claim under the Eighth Amendment. However, the result would not be different had the Court considered the claim as a condition of confinement claim. Plaintiff pled the claim under the Eighth Amendment and the same analysis applies whether the claim is characterized as a failure to protect or condition of confinement claim.

materials cited do not establish the absence or presence of a genuine dispute . . . ." Fed.R.Civ.P. 56(c)(1)(A), (B). The evidence presented must be viewed in the light most favorable to the non-moving party. *Anderson,* 477 U.S. at 255; *Lang v. New York Life Ins. Co.*, 721 F.2d 118, 119 (3d Cir. 1983).

Because Plaintiff is proceeding *pro se*, the Court is required to liberally construe his pleadings. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Nonetheless, this does not require the Court to credit his "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir.1997). Thus, for example, speculation or conclusory allegations, without support, are insufficient. Rather, the allegations must be supported by evidence, which the Court will evaluate under the standard described above to determine if there is merit beyond mere conclusions.

## Discussion

As previously stated, the only claim remaining in this case is Plaintiff's allegation that he has been subjected to an Eighth Amendment violation because the Commonwealth Defendants failed to investigate the claim that the water and/or food at SCI-Fayette was contaminated and they took no action to remedy the situation. According to Plaintiff, his medical problems apparently began while he was housed at SCI-Camp Hill. In 2006, he was transferred to SCI-Fayette and continued to complain of having abdominal pain and gastrointestinal issues.[4]

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25 (1993). The Constitution does not mandate comfortable prisons, but it

---

[4] The date of events are described in the Amended Complaint as "on or about June 27, 2012: 'Continuing wrong' and on or about November 15, 2012." Amended Complaint, ¶ IV (A).

does require officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take 'reasonable measures to guarantee the safety of inmates.'" *Farmer v. Brennan,* 511 U.S. 825, 831 (1994) (quoting *Hudson v. Palmer*, 468 U.S 517, 526-27 (1989)). It follows then that housing prisoners in unsafe conditions constitutes cruel and unusual punishment. *Helling*, 509 U.S. at 33 (citing *Youngberg v. Romeo*, 457 U.S. 307, 315 – 16 (1982)). A prisoner's Eighth Amendment claim can be based upon present harm or possible future harm to health caused by unsafe prison conditions. *Id.* at 33, 35 ("We think that a prison inmate also could successfully complain about demonstrably unsafe drinking water without waiting for an attack of dysentery.").

An inmate seeking to prove that he has been subjected to an Eighth Amendment violation must satisfy two requirements – one objective and the other subjective – and if a plaintiff fails to prove either prong of this test, a finding in favor of defendant is warranted. *Chavarriaga v. State of New Jersey Dept of Corrections*, -- F.3d ---, 2015 WL 7171306, at *8 (3d Cir. Nov. 16, 2015). In the context of Plaintiff's lawsuit, the objective prong requires him to demonstrate that he was personally exposed to unreasonably high levels of contaminated water and/or food. *Helling,* 509 U.S. at 35. This requires "more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such an injury to health will actually be caused by exposure" to the contaminants, but also the court's assessment as to whether the contamination is "so grave that it violates contemporary standards of decency to expose <u>anyone</u> unwilling to such a risk." *Id*. at 36 (emphasis in original). The subjective prong requires Plaintiff to demonstrate "deliberate indifference" on the part of prison officials in exposing him to contaminated water and/or food. *Id*. at 36 – 37.

Here, the Court finds that Plaintiff fails to satisfy both the objective and subjective requirements of an Eighth Amendment claim. Plaintiff's allegations that Defendants failed to investigate allegations of unsafe conditions due to water contamination is belied by the summary judgment record. Plaintiff's allegation that the water supply at SCI-Fayette is contaminated is directly contradicted by overwhelming scientific evidence. Defendants have produced over 100 pages of documentary evidence, all of which conclusively show the water at SCI-Fayette is not contaminated.

Defendants have the results of almost three years of water tests conducted inside of the prison. The first sample was collected on January 31, 2012 (prior to Plaintiff's first complaint), and the last on December 10, 2014 (17 months after this lawsuit was commenced). (See ECF No. 110-1, Exhibit F, H&H Water Controls, Inc. Reports.) The water tested over the years was collected from various locations inside SCI-Fayette. All samples tested the same: "This sample is considered SAFE BACTERIALLY, according to section 109.202 of the Safe Drinking Water Act, at the time the sample was taken." *Id.*

A public DOC memorandum dated December 31, 2014, entitled "Review of Environmental / Medical Allegations at the State Correctional Institution at Fayette," states, in pertinent part as follows:

> After a comprehensive review following complaints of dangerous environmental conditions at the State Correctional Institution (SCI) at Fayette, the Department of Corrections has found no credible evidence of any unsafe environmental conditions at the facility or of any abnormalities with regard to the safety and health of inmates at the prison.
>
> . . .
>
> Initial complaints contained conclusory allegations that coal waste in the vicinity of SCI-Fayette had contaminated the environment. In response, the Department commissioned independent tests of its water supply to be performed in August 2014. Analysts concluded that the water met all drinking water standards and

> guidelines; there was no determination of any chemical concentrations that would cause adverse health conditions.
>
> . . .
>
> Finally, the Department reviewed the administration of gastrointestinal medications ordered from 2010 to 2013 at SCI-Fayette and found the prison to be ranked in the middle of the total number of state facilities.

ECF No. 110-1, Exh. A, Review of Environmental / Medical Allegations at the State Correctional Institution at Fayette.

Paul Noel, M.D., the Chief of Clinical Services for the DOC, issued a memorandum which updated the DOC's findings regarding, among other things, gastrointestinal diseases due to the alleged water problems at SCI-Fayette. Dr. Noel reported, in pertinent part:

> Accusation: there is an increased incidence of gastrointestinal diseases. As an indirect method of counting the number of patients with gastrointestinal symptoms, Diamond Pharmacy provided, by PA DOC site, the number of gastrointestinal medications ordered from 2010-2013. Overall, SCI-FYT is in the middle.
>
> . . .
>
> A review of the above data indicates that there is no increase in disease burden at SCI Fayette. . . .

*Id.,* Exh. B, Dr. Paul Noel, M.D., Chief, Clinical Services, Report.

The records from Diamond Pharmacy reflect that SCI-Fayette's ranking in the amount of gastrointestinal medications provided from 2010-2014 ranges from a high of 11th out of 28 prisons in 2012 to a low of 25 out of 28 prisons in 2010. Never has SCI-Fayette been in the top tier of gastrointestinal drugs provided. *Id.*, at Exh. C., Diamond Pharmacy Reports 2010 – 2014.

Furthermore, on August 28, 2014, Environmental Service Laboratories, Inc., tested water provided by the Tri-County Joint Municipal Authority, the same water authority that supplies SCI-Fayette's water, at various places outside the prison walls. In all samples, the company

concluded that "[t]his sample MEETS current EPA and DEP bacteriological standards of no detectable coliform per 100 mL sample." *Id.* at Exh. D, Environmental Service Laboratories, Inc., Report, August 28, 2014.

Plaintiff fails to rebut the overwhelming scientific evidence produced by Defendants that the water at SCI-Fayette was in accordance with the requisite standards. The burden of proof shifted to Plaintiff to come forward with evidence regarding the presence of contaminants in the water at SCI-Fayette. Because no such evidence has been presented, the Court finds no genuine issue for trial.[5]

As to the subjective factor, the Court finds that Plaintiff has presented no evidence from which a reasonable fact finder could conclude that the Defendants both were aware of a substantial risk to inmate health or safety and then affirmatively disregarded this risk. The summary judgment record evidence reflects that upon receiving initial complaints that the water was contaminated at SCI-Fayette, the DOC conducted comprehensive reviews of any medical problems experienced by inmates at SCI-Fayette due to fly ash and water concerns. Further testing of water samples consistently informed Defendants that the water was not contaminated. Consequently, Plaintiff has failed to prove a genuine issue of material fact as to the issue of deliberate indifference.

For all these reasons, the Court finds that Plaintiff has failed to state a claim with respect to conditions of confinement under the Eighth Amendment.

## Conclusion

Viewing the summary judgment evidence of record in the light most favorable to Plaintiff, the most that can be inferred is that he has experienced gastrointestinal issues while

---

[5] The Court finds that Plaintiff's allegation that his food at SCI-Fayette was contaminated is nothing more than speculative.

incarcerated at SCI-Fayette. However, in the absence of any evidence of the presence of dangerous contaminants in the water and/or food, the cause or causes of Plaintiff's gastrointestinal issues remains a matter of pure conjecture. Therefore, the Court will grant summary judgment for the Commonwealth Defendants as a matter of law. An appropriate order follows.

## ORDER

**AND NOW**, this 30th day of November, 2015, it is hereby **ORDERED, ADJUDGED AND DECREED** that, for the reasons set forth in the accompanying Memorandum, Plaintiff's Motions for Summary Judgment are **DENIED** and Defendants' Motion for Summary Judgment is **GRANTED.**

s/ Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc: JOSE SANCHEZ
GR2847
PO Box 9999
LaBelle, PA 15450
(via United States First Class Mail)

Robert A. Willig
Office of Attorney General
(via CM/ECF electronic notification)